UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARC J. BUHOLZER,

      Plaintiff,

    v.

HORIZON AIR INDUSTRIES, INC., a
Washington corporation, and LaMAR
HAUGAARD,

      Defendants.

Case No. C04-5178FDB

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

**INTRODUCTION**

Defendants move for summary judgment on substantive and procedural grounds to dismiss Plaintiff's federal and state law claims for disability discrimination and retaliation.  Defendant Horizon is a regional airline, and LaMar Haugaard is Horizon's Chief Pilot, whose duties involve day-to-day management and supervision of Horizon's pilots.

Plaintiff was hired in the early 1990's as a First Officer pilot (a co-pilot).  His work schedule, as with the other pilots, was determined by a bid process whereby pilots bid on particular 35-day period schedules, and awards on the bids are made on a seniority basis.  Plaintiff was counseled in November 1999 concerning a proficiency check and his excessive use of sick leave.  Chief Pilot Haugaard followed up on the 1999 counseling session with a letter dated May 11, 2000 re-

ORDER - 1

1  emphasizing Horizon's written attendance policy that employees will report to work promptly and

2  regularly.  (Haugaard decl., Ex. B, p. 11.)  That letter pointed out that Plaintiff had missed 30% of

3  his assigned work in the previous year.  (Haugaard decl., Ex. B, p. 12.)  Plaintiff had been diagnosed

4  with lumbar degenerative disc disease, which compromises his ability to fly, and for which he can

5  take pain relieving medications, but then would not be able to fly for that reason.  (See Buholzer

6  dep., Ex. A to Genster decl. pp. 9-17.)

7        In early June 2002, Chief Pilot Haugaard had decided to terminate Plaintiff, but following a

8  meeting with Teamster Business Agent Bill Rainey on June 4, 2002, decided to offer to Plaintiff a

9  "Last Chance Agreement" that would require Plaintiff to have perfect attendance from June 10, 2002

10 to June 10, 2003.  Plaintiff entered into the Last Chance Agreement on June 7, 2002.  (Haugaard

11 decl. Ex. E.)

12       On December 21, 2002, Plaintiff called in sick.  (Haugaard decl. ¶ 10.)  Chief Pilot Haugaard

13 terminated Plaintiff in early January 2003, and confirmed the termination by letter dated January 15,

14 2003.  (Haugaard decl. ¶ 10, Ex. F.)

15       Plaintiff grieved the termination, but the arbitration panel denied the grievance and found just

16 cause for the termination.  Plaintiff filed a complaint with the EEOC, he then filed this case in Clark

17 County Superior Court, and Defendant removed the matter to this Court.

18                              **SUMMARY JUDGMENT STANDARD**

19        Summary judgment is proper if  the moving party establishes that there are no genuine

20 issues of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the

21 moving party shows that there are no genuine issues of material fact, the non-moving party must go

22 beyond the pleadings and designate facts showing an issue for trial.  *Celotex Corp. v.  Catrett*, 477

23 U.S. 317, 322-323 (1986).  Inferences drawn from the facts are viewed in favor of the non-moving

24 party.  *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

25        Summary judgment is proper if a defendant shows that there is no evidence supporting an

26 ORDER - 2

element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

The elements of a claim of unlawful discharge under the Americans with Disabilities Act require a plaintiff to demonstrate

> (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) he was terminated because of his disability.

*Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1999). Plaintiff is not "a individual with a disability" under element number two above because he cannot perform the essential functions of Horizon's First Officer position because he has demonstrated a prolonged inability to regularly attend work and complete his assigned flights. In *Nesser v. Transworld Airlines, Inc.*, 160 F.3d 442 (1998), the employee, Nesser, suffered from Crohn's disease, missed a significant amount of work, and was terminated for excessive absenteeism. The *Nesser* court stated:

> Nesser did not establish that he could perform the essential functions of his job without accommodation because he was unable to attend work on a regular basis. We have recognized that attendance at work is a necessary job function. "An employee who is 'unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones.'"

160 F.3d at 445 (citations omitted). Washington case law is in accord. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 534, 70 P.3d 126 (2003)("Consequently, as federal case law shows, job presence or attendance may indeed be an essential job function.").

Neither can Plaintiff demonstrate that he has a "disability" within the meaning of the ADA, which defines "disability" as follows:

ORDER - 3

1
2
(A) a physical or mental impairment that substantially limits one or more of the major life activities of (an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

3   *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539 (9th Cir. 1997), quoting 42 U.S.C. § 12102(2).

4   Plaintiff is not substantially limited on one or more of an individual's major life activities, and has

5   admitted that while his frequent episodes of lumbar back pain prevent him from working as a pilot,

6   he is capable of performing other jobs, such as an office job.   (See Buholzer dep. attached to

7   Genster dec. p. 12.)

8   Plaintiff was terminated for a legitimate, non-discriminatory reason – violation of the

9   conditions of the "last chance agreement."  Cases in several jurisdictions have concluded that

10   terminations for violation of last chance agreements are legitimate, nondiscriminatory bases for

11   discharge.  *See, e.g. Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003)(employer acted for

12   legitimate, non-discriminatory reasoning in terminating plaintiff for violation of last chance

13   agreement; summary judgment dismissing Title VII discrimination claims affirmed.).  In this case, not

14   only was there a last chance agreement, but Plaintiff had grieved his discharge under the collective

15   bargaining agreement.  The arbitration panel denied the grievance and found that Plaintiff's

16   termination was for just cause.  Plaintiff did not appeal this decision

17   Plaintiff 's ADA discrimination and retaliation claims are untimely, and Plaintiff's ADA claim

18   against Defendant Haugaard cannot stand, because the ADA does not provide for personal liability.

19   *See, respectively, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 112 (2002)(grievance must be

20   filed with the EEOC within 300 days of the employment practice) and *Mason v. Stallings*, 82 F.3d

21   1007, 1009 (11th Cir. 1996).  The last change agreement was entered into between the parties on

22   June 7, 2002, and a charge was not filed with the EEOC until November 2003.

23   Plaintiff argues through his Declaration in Opposition to Defendants' Motion for Summary

24   Judgment his missed work percentages of over 30% and sometimes over 50% between 2000 and

25   2002, discusses the "alleged reasons" for the last chance agreement, and he asserts that Horizon

26   ORDER - 4

1   ignored his certification of disability and his approved 90-day family and medical leave.

2          Plaintiff's arguments fail to persuade the court that the ADA claim should not be dismissed.

3   While Plaintiff seems to accept that attendance is an essential function of an airline pilots job and

4   appears to want credit for the time that his was not scheduled to work, his argument is unavailing.

5   Defendants have charted Plaintiff's bids for the years 2000 and 2001, the number of trips scheduled

6   for him and the number of trips and trip days scheduled and missed. The record for the two years is

7   astounding: out of 102 trips scheduled, Plaintiff missed 53; out of the total number of 258 trip days

8   scheduled, Plaintiff missed 136.  On this record, Defendants lawfully discharged Plaintiff.

9          Plaintiff does not present any authority that discharge for violation of a last chance agreement

10  is a legitimate non-discriminatory basis for discharge.  He merely states that he did not understand

11  what he was doing.  Plaintiff, however,  litigated this issue in the arbitration, and the panel rejected

12  the argument.  Moreover, Plaintiff stated at the hearing that he clearly understood the terms of the

13  agreement when he signed it; he stated that he read it, he understood that he was on probation and

14  could use no sick time.  (Supplemental Genster Decl., Ex. B at 11-12.)   The arbitrators' Opinion and

15  Award stated:

16          Through his signature [on the Last Chance Agreement], Mr. Buholzer chose to
            accept the 100% attendance standard.  He therefore received the reciprocal benefit of
17          that bargain, i.e. continued employment.  If Buholzer truly felt the 100% attendance
            standard was not realistic, then he should have exercised the option of refusing the
18          LCA (Last Chance Agreement) offer and taking his chances with trying to challenge
            the termination through grievance.  Mr. Buholzer had very competent Union
19          representation when the alternative of a last chance agreement was discussed.  The
            Board is convinced Mr. Buholzer was fully advised of his options and their attendant
20          risks before electing to sign the LCA.  The Grievant clearly breached the condition
            placed upon his continued employment when he called in sick on December 21, 2002.
21          The Company was thereon entitled to enforce the agreement that had been signed on
            June 7, 2002 and had just cause for termination.
22
    (Haugaard Decl., Ex. G at 38.)
23
           While Plaintiff has suggested that his January 14, 2003 termination was in retaliation for
24
    seeking to take leave under the Family Medical Leave Act in April 2000.  A lack of proximity in time
25

26  ORDER - 5

1   between the alleged protected activity and the retaliation is an important element that cannot be

2   demonstrated here.  Plaintiff's complaint does not allege such a claim under the FMLA, and the

3   February 14, 2005 date for amending pleadings has passed.

4          Another reason the retaliation claim lacks merit is that Plaintiff was given chances to improve

5   his attendance over a two-year period in spite of his excessive absenteeism.  That he was given a last

6   chance in the form of a "last chance agreement" does not amount to retaliation.

7                                            **CONCLUSION**

8          Defendants have demonstrated that there is no genuine issue of material fact and that

9   Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.  Plaintiff cannot

10  demonstrate a prima facie case of discrimination under the ADA.  Plaintiff has failed to demonstrate

11  that he is a qualified individual with a disability who is able to perform the essential functions of the

12  job with or without reasonable accommodation because he has not demonstrated that he is able to

13  attend work regularly and complete his assigned flights.  Plaintiff has also failed to demonstrate a

14  disability that limits one or more of his major life activities, as Plaintiff admits that there is other work

15  that he can do, such as an office job.  Plaintiff was terminated for a legitimate, non-discriminatory

16  reason: he violated the conditions of his "last chance agreement."  Plaintiff's retaliation claim is

17  untimely and he may not maintain a claim against Defendant Haugaard in his personal capacity.

18  Plaintiff's claims must be dismissed.

19         NOW, THEREFORE, IT IS ORDERED: Defendant's Motion for Summary Judgment (Dkt.

20  # 20) is GRANTED, and Plaintiff's cause of action is DISMISSED.

21         DATED this 13th day of May, 2005.

22

23                                            _____
                                              FRANKLIN D. BURGESS
24                                            UNITED STATES DISTRICT JUDGE

25

26  ORDER - 6